372 P.2d 327

**Louis James HEMPHILL, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona and Sam Witt (Sam Witt, Contractor), Respondents.**

**No. 7218.**

Supreme Court of Arizona.

In Division.

June 20, 1962.

Tannenbaum & Tannenbaum, Udall & Udall, Tucson, William D. Browning, Tucson, of counsel, for petitioner.

James D. Lester, Phoenix, for respondent The Industrial Commission of Arizona.

Donald J. Morgan, Edward E. Davis, C. E. Singer, Jr., and Lorin G. Shelley, Phoenix, of counsel.

ANTHONY T. DEDDENS, Judge of the ·Superior Court.

Petitioner seeks to set aside the Industrial Commission's award of March 4, 1960, that his condition had become stationary and that he was entitled to no further compensation, which was affirmed on a rehearing on November 7, 1960. The question involved is, "Does reasonable evidence support the Commission's findings?"

On or about December 2, 1954, petitioner was working approximately 300 to 400 feet away from a location at which a chemical was being sprayed on adjoining property and petitioner inhaled fumes from the spray. Following the inhalation of the fumes, petitioner became sick, experiencing chest pains, coughing and spitting up of blood and on December 8 he left the job and went home sick and was subsequently diagnosed as having "chemical bronchitis" for which he was hospitalized December 10. The Commission found on January 4, 1955, that petitioner had a compensable claim caused by the industrial accident of December 2, 1954.

Subsequently, while petitioner was confined in the Pima County Jail, the Commission suspended benefits, but reopened the case and a board consulted with petitioner and reported to the Commission that his condition was stationary and it closed the case.

Following sentencing to the Arizona State Prison, petitioner's condition became progressively worse; he lost weight and lost his voice, which was a residual effect of permanent hoarseness. After his discharge from the prison, his case was reopened on October 24, 1958, and an award made for "new, additional, or previously undiscovered disability". This award followed a medical board finding that he had suffered from "vasomotor rhinosinusitis and chronic bronchospastic bronchitis, with probably early obstructive emphysema", all of which were found to be caused by the industrial injury in 1954.

On March 4, 1960, the Commission entered its award finding the petitioner's condition to be "stationary", limiting the award to payments already made. After rehearing the Commission on November 7, 1960 affirmed its prior award, and thereafter petitioner brought this matter before us upon the usual writ of certiorari.

■ Petitioner contends that the Commission erred on the ground that there is neither reasonable nor substantial evidence in the record on which to sustain the awards of March 4, and November 7, 1960, and that the uncontradicted medical evidence shows that petitioner's present disability was produced, aggravated or accentuated by the industrial injury which he admittedly sustained. Respondent contends that the findings, decisions and award are reasonably supported by the evidence and sustained in law.

At the rehearing petitioner testified that he did not know anything about any asthmatic or bronchitic condition prior to the injury on December 2, 1954, following which the doctor had told him that he thought it was bronchitis and similar to an asthmatic condition.

Medical testimony at the rehearing by Dr. McFayden established that the last time he saw petitioner was on April 31, 1960, at which time:

"His nose was running, his throat stayed sore all the time; he was having pains in the right chest * * * he had quite a lot of wheezing, at night particularly. Whenever he got into dust, he seemed to fill up in his chest with fluid and changes in the weather have had a marked effect on him. He had a swollen red mucus membrane of the nose. His voice was quite hoarse from inspiration and expiration and wheezes in the chest."

The doctor's diagnosis was "the same as before, a vasomotor rhinitis and laryngitis and bronchospastic bronchitis", which he stated in his opinion was "likely * * * to be lifelong". The doctor further stated petitioner's condition on April 13, 1960, was substantially the same as when the former saw him on July 2, 1958, except that there was a little more inflammation present at the time of the first visit, and that some change occurred in petitioner's lungs at the original episode which produced an asthmatic condition referred to by the doctors as asthmatic bronchitis.

Respondent justified the findings and award of the Commission by (1) The cross-examination of Dr. McFayden in which counsel unsuccessfully sought to establish that one school of medical thought considered asthma to be wholly an emotional condition. (The doctor's testimony was that the majority of the medical profession do not think that asthma is entirely an emotional problem.) (2) An x-ray examination of December 7, 1954, showing calcified scarring present in certain portions of the lungs. (3) Testimony that while petitioner had had approximately one cold per year prior to the inhalation of the chemical, now when he had a chest cold he would sneeze and cough occasionally, such as when he had the whooping cough; and (4) The opinion of Dr. Mahoney (a member of the Medical Advisory Board) in his report of November 24, 1959, in which he states:

"After studying the reports of the above examination, I feel that it would be impossible for a consultant to state definitely whether or not the man's present condition is due entirely to the injury he sustained four years ago." (Emphasis supplied.)

We think there is no medical evidence in the record to support this contention

that the inhalation of the fumes caused an accentuation or aggravation of a latent condition and that the aggravation had subsided and the pre-existent disease now continues in its progressive course.

 This court is bound by the findings of the Commission if the medical evidence conflicts under the rule laid down in Harman v. Industrial Commission, 76 Ariz. 40, 258 P.2d 427 (1953). Nevertheless, medical *opinion* alone is not enough upon which to base an award; the medical evidence must consist of findings of medical facts concerning the condition of the petitioner. McAllister v. Industrial Commission, 83 Ariz. 213, 319 P.2d 129 (1957); Tashner v. Industrial Commission, 62 Ariz. 333, 157 P.2d 608 (1945). We find no evidence in the record of the instant case of medical facts or findings, upon which the Board and Commission could reasonably conclude that the petitioner's condition was stationary and that a pre-existing disease was continuing in its progressive course wholly independent of the industrial injury sustained by the petitioner on December 2, 1954, which industrial injury was affirmed twice by the Commission. Dr. Mahoney's negative conclusions are not predicated upon medical findings or facts, and constitute merely an opinion that he could not relate petitioner's present condition entirely to the injury. This opinion does not conflict with the testimony and diagnosis of Dr. McFayden.

It is ordered that the findings and award of November 7, 1960, be set aside.

JENNINGS and LOCKWOOD, JJ., concurring.